SOUTHWESTERN LAND COMPANY, Appellant, vs. ELLIS, interpleaded, Respondent.

*October 21 — November 7, 1899.*

*Garnishment: Moneys deposited pursuant to stipulation on compromise: Collateral issues: Assignment.*

1. Upon a compromise of the differences between S. and H., some of which were in suit, a sum of money was; pursuant to a stipulation, deposited by H. with his attorneys to be by them paid to S.'s attorney, E., upon compliance by E. with certain conditions, one of which was the satisfaction of a real-estate mortgage held by plaintiff herein against S. After all the conditions had been complied with, but before the money had been paid over to E., the plaintiff garnished H.'s attorneys for the purpose of subjecting the money to the payment of a claim against S. The garnishees paid the money into court, and E., being interpleaded as defendant, claimed the money as his own by virtue of an attorney's lien thereon for services and expenses and by virtue of an assignment from S. It appeared that the value of E.'s services, together with his disbursements and the amount advanced by him for the satisfaction of the mortgage mentioned, exceeded the sum in question. *Held,* that the money was not subject to garnishment as the property of S., and that the trial court properly ordered it to be paid over to E.

2. The plaintiff could not, in such garnishment proceedings, litigate a claim against E. for false representations in procuring the satisfaction of the mortgage, or a claim for damages for breach of contract in performing services for it in the suit of S. against H.; nor could it question E.'s right to the money in the garnishees' hands on the ground that it belonged to his assignee for the benefit of creditors.

3. A written assignment from S. to E. of the proceeds of the litigation and settlement between S. and H. did not confer upon E. any rights

in addition to those secured under the stipulation, but was merely an acknowledgment of those rights; and it is immaterial, therefore, that such assignment was not executed until after the garnishment.

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

For the appellant there were briefs by *Wickham & Farr,* and oral argument by *James Wickham.*

For the respondent there was a brief by *J. F. Ellis,* attorney *in pro. per.,* and *W. F. Bailey,* of counsel, and oral argument by *Mr. Bailey.*

CASSODAY, C. J. This action was commenced against the defendant M. Swihart on or about June 25, 1897, to recover $601.30 and interest due upon a promissory note, upon which judgment was subsequently recovered for $654.88 damages and costs. At or about the time of its commencement a garnishee summons therein was served upon the respective members of the law firm of Jenkins & Jenkins. That firm, as such garnishees, answered to the effect that they were not in any manner nor upon any account indebted or under liability to Swihart, and did not have in their possession or under their control any real estate, nor any personal property, effects, or credits of any description whatever, belonging to Swihart, or in which he had any interest, and were in no manner liable as garnishees in this action, except as they might be held liable upon the following facts, to wit:

On April 30, 1897, an action which had been commenced in November, 1893, was still pending in the circuit court for Chippewa county, in which Mr. Swihart was plaintiff and U. A. Harless and several others were defendants, and in which the defendant *Ellis* was the attorney for Swihart, and the garnishees, Jenkins & Jenkins, were attorneys for Harless and others. On April 30, 1897, the parties to that action, through their attorneys, agreed to settle the same,

and accordingly entered into a stipulation to the effect that — whereas all the material facts in the action were at issue and all the claims made by the plaintiff therein were denied by the defendants, and whereas the parties thereto had other matters of dispute and differences between them, involving the right by the plaintiff to the timber on the lands described, as well as a judgment for deficiency against Swihart on the foreclosure of a certain mortgage and other matters of difference between them which should be settled and compromised, and the defendants who had appeared therein were willing to pay in compromising, settling, discharging, and satisfying such differences and disputes, and upon the delivery of the releases, satisfaction, deeds, and discharges therein mentioned, the sum of $800 to settle and compromise the same — U. A. Harless and S. P. Grindle should become the owners of the lands described in accordance with the patent issued to them by the state, and were entitled to a decree of the court affirming their title; that the taxes for the years 1894 and 1895 theretofore paid by Swihart thereon, amounting to $47.30, be paid back to him out of the $800; that the balance thereof, to wit, $752.70, be paid to Swihart's attorney, *J. F. Ellis*, upon the delivery of a proper release or satisfaction releasing the lands described from a certain mortgage given by Swihart and wife to the *Southwestern Land Company*, June 12, 1894, and recorded, and the delivery of the deeds, tax receipts for the taxes for 1894 and 1895, and the discharges therein mentioned; that the claim of Swihart to all the timber on the lands described be, and the same was thereby, released, satisfied, and discharged; that the judgment for the deficiency on the foreclosure in favor of Harless and Grindle against Swihart, dated March 5, 1896, for $103.40, be satisfied and discharged of record; that Swihart and wife should execute and deliver to U. A. Harless and S. P. Grindle a quitclaim deed in due form to certain lands therein described; that the

claims for damages by either party against the other be, and the same were thereby, satisfied and settled in full; that all claims for damages made by Swihart therein against U. A. Harless and others, or any of them, for and on account of the matters and things alleged in the complaint therein be, and the same were thereby, satisfied and discharged; and that the decree provided for by such stipulation to be entered therein should be without costs to either party.

Said answer further stated that May 15, 1897, U. A. Harless deposited with Jenkins & Jenkins $752.70, to be paid to *J. F. Ellis* upon the delivery of a proper release or satisfaction of the *Southwestern Land Company* of the mortgage mentioned in such stipulation, and the delivery of the deeds, releases, tax receipts, etc., mentioned therein; that such tax receipts were delivered to U. A. Harless May 15, 1897; that the quitclaim deed mentioned was delivered to Jenkins & Jenkins, for U. A. Harless, May 15, 1897, and the satisfaction of the mortgage mentioned was sent by *J. F. Ellis* to Jenkins & Jenkins by mail from Eau Claire June 22, 1897, and was returned by Jenkins & Jenkins to *J. F. Ellis* June 23, 1897, with a letter from them calling his attention to a mistake in such satisfaction and inclosing a blank satisfaction of such mortgage to be executed by the *Southwestern Land Company;* that at the time of such service of the garnishee summons herein Jenkins & Jenkins had not received such satisfaction, or any other satisfaction, of that mortgage; that *J. F. Ellis* claims the $752.70 under and by the terms of the stipulation, and notified Jenkins & Jenkins that he had the satisfaction of the mortgage which Jenkins & Jenkins had prepared, and sent to him June 23, 1897, properly executed and ready to be delivered upon payment of the amount named; that the postoffice address of *J. F. Ellis* was and is Eau Claire; that May 15, 1897, Jenkins & Jenkins gave to *J. F. Ellis* a memorandum on the foot of

such stipulation to the effect that May 15, 1897, U. A. Harless had deposited with them the $752.70 to be paid to *J. F. Ellis* pursuant to the stipulation upon the delivery of a proper release or satisfaction of the mortgage mentioned, and the delivery of the deeds, releases, tax receipts, etc., mentioned therein; that the garnishees, being in doubt respecting their liability as such garnishees therein, set forth all the facts and circumstances respecting the same, and submitted to the court the question of their liability as garnishees in this action.

On August 31, 1897, C. L. Allen, attorney for the plaintiff in this action, made an affidavit stating, in substance, the commencement of the action; that the garnishees had answered, giving copies of such answers; that the $752.70 in the hands of Jenkins & Jenkins was claimed by *J. F. Ellis*, stating his name and residence and the nature of his claim as made by him,— asking that *Ellis* be interpleaded in the garnishee action in the place of Jenkins & Jenkins. On September 9, 1897, on such affidavit of Allen, and such answer of the garnishees, and the records in the action, the court ordered *J. F. Ellis* to be interpleaded in the garnishee action; that he be served with a copy of the order, a notice of interpleader; and that the garnishees, Jenkins & Jenkins, pay to the clerk of the court $752.70, being the moneys in their hands, and be discharged from liability. Notice of such interpleader was duly served upon *J. F. Ellis*, as required by such order, together with the copy of the order, and due proof thereof made. *J. F. Ellis* thereupon answered at great length, and to the effect that he claimed the $752.70 by virtue of having an attorney's lien thereon for services and expenses rendered in the action of *Swihart v. Harless and others*, and by virtue of an assignment from Swihart to him made April 30, 1897, and also that he had advanced for Swihart $350, which was paid to the plaintiff before this garnishment was commenced, for the purpose of

releasing the mortgage and judgment mentioned, and which. plaintiff held against Swihart.

Upon the trial of the issues formed by such answer of *Ellis* and the affidavit for garnishment the court found as matters of fact, in effect, that between November 23, 1893, and April 30, 1897, *Ellis* performed legal services in behalf of Swihart as his attorney in certain actions brought by Swihart against U. A. Harless and others, which were of the reasonable value of $350; that he also incurred and expended in behalf of Swihart for disbursements in such action· between such dates $105.41; that April 30, 1897, a compromise settlement of the matters in dispute in such actions between Swihart and Harless and others was effected,. whereby Harless and others agreed to pay to Swihart $800 in settlement thereof as per the written stipulation mentioned; that Swihart retained $47.30 of that amount to repay him for what he had expended for taxes as mentioned; that. thereupon Harless and others paid to and deposited with Jenkins & Jenkins $752.70, to be paid to *J. F. Ellis*, according to the terms of the stipulation, upon the execution and delivery of a proper release and satisfaction of the mortgage· mentioned; that in concluding the terms of the settlement, on April 30, 1897, for a valuable consideration, by an instrument in writing, Swihart duly transferred, assigned, and set. over unto *J. F. Ellis* the $752.70 so deposited with Jenkins. & Jenkins, subject to the terms and conditions of the stipulation mentioned; that all the terms and conditions of the stipulation to be performed by *Ellis* were by him performed, and that he paid to the *Southwestern Land Company* in payment and satisfaction of the mortgage mentioned, and for the satisfaction and release thereof, $350, June 22, 1897; that. he duly tendered a release of that mortgage to Jenkins & Jenkins, and demanded the $752.70 shortly after the institution of the garnishee proceedings against Jenkins & Jenkins; that the value of the services rendered by *Ellis*, together

with the sums incurred and expended by him as disburse-
ments in the actions mentioned, together with the sums paid
by him to the *Southwestern Land Company* for a release and
satisfaction of the mortgage referred to, exceed in amount
the sum so deposited with Jenkins & Jenkins, or either of
such firm; and that no part of that sum has been paid to
*Ellis.*

And as conclusions of law the court found, in effect, that
the interpleaded defendant, *Ellis*, was entitled to the money
paid to the clerk of the court in the garnishment proceed-
ings, being $752.70, and to judgment for the payment thereof
to him, and for his costs, not exceeding $25, and also his dis-
bursements therein against the plaintiff, the *Southwestern
Land Company;* and ordered judgment to be entered accord-
ingly.

From the judgment so entered the plaintiff appeals.

In the suit of *Swihart v. Harless and others* nothing was
conceded to be due. On the contrary, all material allega-
tions of the complaint were put in issue by the answer. The
$800 paid by Harless and others was not to satisfy an ad-
mitted indebtedness from them to Swihart, but by way of
compromise and settlement of the numerous differences and
disputes mentioned in the stipulation. It was stipulated
that Swihart should have $47.30 of that amount on account
of the taxes he had paid, but neither he nor *Ellis* was in-
trusted with any portion of the balance of $752.70, which
was deposited with Jenkins & Jenkins, and they were to
pay the same to *Ellis* upon his complying with the terms
and conditions of the stipulation. The amount of the mort-
gage held by the plaintiff ($350) was paid by *Ellis*, June 22,
1897, being prior to the service of the garnishee summons
on Jenkins & Jenkins. The only dispute is whether the
money so in the hands of Jenkins & Jenkins should be held
on the garnishment or paid over to *Ellis* as adjudged by the
trial court. It was admitted of record by the attorneys on
the trial that all the conditions of the stipulation had been

complied with, and that the $752.70 was then in court to
abide the event of the suit.   It is true that the release of the
mortgage sent by *Ellis* to Jenkins & Jenkins prior to the
garnishment was defective, and the perfected release was
not executed and returned to Jenkins & Jenkins until after
the garnishment.   But that release or satisfaction was merely
written evidence of the payment made by *Ellis*, and conse-
quently the discharge, which occurred prior to the garnish-
ment; so that the terms and conditions of the stipulation
had been fully complied with prior to the garnishment, ex-
cept that the release or satisfaction was not perfected until
a short time after the garnishment, and the money held by
Jenkins & Jenkins had not in fact been paid over to *Ellis*.

Counsel for the plaintiff contends that the release of the
mortgage was obtained from the plaintiff by the false rep-
resentations of *Ellis*, and also contends that *Ellis* was em-
ployed by the plaintiff to prosecute the action of *Swihart v.
Harless and others* at the expense of the plaintiff, under an
agreement that the plaintiff should be paid out of the pro-
ceeds of all money that Swihart was owing to the plaintiff;
and that in the performance of such service *Ellis* worked
against the interest of the plaintiff, instead of working for
its interest.   In answer to such contentions it is enough to
say that, whatever grievance or cause of action the plaintiff
may have against *Ellis*, yet it cannot be redressed in this
garnishment to obtain money belonging to Swihart.

Counsel for the plaintiff further contends that, as *Ellis*
made a voluntary assignment for the benefit of his creditors
November 30, 1894, and as most of his services in the action
of *Swihart v. Harless and others* were performed prior to such
assignment, they necessarily passed to his assignee, and so did
not belong to *Ellis* at the time of the garnishment.   But
the plaintiff has no right to the value of such services by
reason of that assignment, and cannot vicariously obtain the
same for the benefit of such assignee, much less for itself.

Counsel for the plaintiff contends that the money was paid

into court as Swihart's money, and that the plaintiff was entitled to the same by virtue of its garnishment, unless *Ellis* had a prior claim thereto. But the real question is whether the money was the property of Swihart at the time the garnishee summons was served upon Jenkins & Jenkins. The stipulation was made nearly two months prior to such garnishment. By the terms of that stipulation the $752.70 was to be paid to *Ellis* upon his procuring the release of the mortgage and performing the other things therein specified. Those things were all performed, and the mortgage paid, and a defective release thereof delivered, prior to the garnishment, and a perfected release delivered very soon after the garnishment. By the stipulation Swihart consented that the money should be so paid to *Ellis*. Swihart made a written assignment to *Ellis* of the entire proceeds of that litigation and settlement under date of April 30, 1897, being the same date as the stipulation. True, it is contended that Swihart did not in fact sign that assignment until some time after the garnishment; but that assignment, after all, was nothing more than a written acknowledgment on the part of Swihart that *Ellis* could have the money, subject to the terms and conditions mentioned in the stipulation. Had *Ellis* failed to procure the release of the mortgage, or had there been a failure to execute the quitclaim deed therein mentioned, the money so on deposit with Jenkins & Jenkins would necessarily have been returned to U. A. Harless. In no event was that money, by the terms of the stipulation, to be paid over to Swihart. He had no right, title, or claim to the same at the time of the service of the garnishee summons.

We find no material error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.